UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE LED SIGN COMPANY, LLC, and<br>NATIONAL LED SIGN COMPANY, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JANE HWEE, SHU WU, and<br>OPTEC DISPLAYS, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION H-08-1463 |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants Jane Hwee, Shu Wu, and Optec Displays, Inc.,'s motion to dismiss for lack of personal jurisdiction, transfer venue, and/or dismiss for failure to state a claim. Dkt. 17. On consideration of the parties' pleadings, the evidence, and the applicable law, defendants' motion to dismiss for lack of personal jurisdiction and defendants' motion to transfer venue are DENIED. Defendants' motion to dismiss for failure to state a claim is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

Plaintiff The LED Sign Company, LLC, ("LED") is a Texas limited liability company based in Houston. Dkt. 16. Defendant Optec Displays, Inc., ("Optec") is a California corporation that employs defendant Jane Hwee ("Hwee") as an account manager. Dkt. 17. Defendant Shu Wu ("Wu") is a principal and part owner of Optec. *Id.* Both Hwee and Wu are California residents. *Id.* Optec manufactures, distributes and sells electronic display signs to sign retailers such as LED. Dkts. 16, 17. Optec and LED have had a business relationship since 2004, the year in which LED began purchasing signs from Optec for resale. *Id.* Optec shipped signs to Texas for LED to sell to

LED's customers. Dkt. 22. Optec gave LED a variety of Optec marketing materials to use in Texas, including display signs, catalogs, and brochures. *Id.* Wu and Hwee traveled to Texas at least twice to meet with LED representatives regarding the ongoing business relationship between Optec and LED. *Id.*

By early 2007, LED had accumulated a sizable debt to Optec. Dkts. 17, 22. In April 2007, Wu and another Optec employee traveled to Houston, Texas, on Optec's behalf to negotiate with LED regarding repayment of the debt. Dkt. 22. Wu and Hwee participated in further negotiations via phone and email. *Id.* Optec and LED eventually agreed that they would form a new company, plaintiff National LED Sign Company, Inc., ("National") to deal directly with Optec. *Id.* All of LED's sales of Optec products would thereafter be conducted through National. *Id.* Optec would have financial control of National, and National's profits would be used to pay off LED's debt to Optec. *Id.* LED would shut down all of its current bank accounts so that Optec could open new bank accounts in National's name. *Id.* All of LED's incoming revenue would be sent directly to National and placed in National's bank accounts (that Optec controlled), giving Optec a great deal of control over LED as well. *Id.* Optec and LED signed a contract to this effect on May 1, 2007. *Id.*, Ex. A. The contract specified that a "person appointed by Shu Wu" would receive 25% ownership of National and that 25% of LED would stand as collateral for LED's debt to Optec. *Id.*

Optec and LED then formed National as a Texas corporation, headquartered in Houston; Wu and Hwee were appointed officers of National. Dkt. 22. Wu, Hwee, and other Optec employees directed and managed the business affairs of National, engaging in multiple daily telephone calls and electronic communications with National's Texas employees. *Id.* National conducted sales of Optec signs within Texas and its customers' payments were deposited in the National bank accounts. *Id.*

Wu and Hwee had total and exclusive control of National's bank accounts, including control over the amounts given to LED to pay its own obligations. *Id.*

The relationship between Optec and LED eventually soured because of disputes over Optec's warranty obligations to LED as well as Wu, Hwee, and/or Optec's management of the National bank accounts. Dkt. 16. On April 4, 2008, LED and National filed suit against Optec, Wu and Hwee in the 157th State District Court for Harris County, Texas alleging breach of contract, breach of fiduciary duty, fraud, conspiracy, defamation/business disparagement, and several other causes of action. Dkt. 1, ex. A. LED and National alleged, among other things, that Wu and Hwee took over $2 million from the National bank accounts, including not only profits but also customer deposits, and applied that money to the debt LED owed Optec. Dkt. 1. On April 22, 2008, Optec filed its own lawsuit against LED and National in the United States District Court for the Central District of California, alleging that LED still owed Optec several hundred thousand dollars and had breached its obligations under an "open book contract." Dkts. 17, 24. Optec then removed this case to this court on May 12, 2008. Dkt. 2. On June 12, 2008, plaintiffs filed a motion in California to dismiss Optec's case for lack of personal jurisdiction, or in the alternative, transfer venue to Texas because the cases were related and plaintiffs had filed first in Texas. Dkt. 17, Exs. A-B. The California district court decided on July 30, 2008, that it had jurisdiction over plaintiffs and would not transfer venue to Texas because, as Optec had argued, the two lawsuits were not sufficiently related. *Id.* Defendants then filed the instant motion in this court.

## II. ANALYSIS

Defendants seek to dismiss plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, defendants seek to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). In further alternative, defendants seek to

3

dismiss plaintiffs' fraud, conspiracy and defamation/business disparagement causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**A.  Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2)**

   *1. Standard of Review*

When the court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdiction.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  Where a question of fact is present, that question will be resolved in favor of the plaintiff.  *Id.*  The burden then shifts to the defendant to demonstrate that the assertion of jurisdiction would be unfair; however, such demonstrations are rare.  *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  In deciding whether to exercise personal jurisdiction, the court can consider the entire contents of the record, including affidavits.  *Paz v. Bush Engineered Metals, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

Federal courts sitting in diversity may exercise personal jurisdiction to the extent permitted by the laws of the state in which the court sits.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)).  The Texas long-arm statute allows jurisdiction to be exercised to the extent allowable under the Due Process clause of the Fourteenth Amendment.  *Fielding*, 415 F.3d at 424-25 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14, 104 S. Ct. 1868 (1984)).  The Due Process analysis entails a two-part inquiry.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S.Ct. 2174 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S.Ct. 559 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).  The first prong of the due process test requires sufficient minimum contacts with the forum, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339 (1940)). Minimum contacts are established through the assertion of either general or specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 865 (5th Cir. 2001). Specific jurisdiction refers to a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n. 8. General jurisdiction refers to a suit which does not arise from the nonresident's contacts with the forum, and is asserted only over defendants who maintain "continuous and systematic" contacts in a particular forum. *Id.* at 415.

General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993); *Helicopteros*, 466 U.S. at 415. Such contacts must be more than single or isolated activities. *Int'l Shoe Co.*, 326 U.S. at 317. A court must evaluate the "contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). The contacts must be reviewed in toto, and not in isolation from one another. *Id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986)).

A forum state may exercise specific jurisdiction over a nonresident defendant "when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). The court considers whether the defendant has made a purposeful choice of the laws of the forum state and could reasonably anticipate being sued there. *Burger King*, 471 U.S. at 481-82. A single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *Ruston*, 9 F.3d at 415. "[I]f a plaintiff's claims relate to different

5

forum contacts of the defendant, specific jurisdiction must be established for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).

The second prong of the due process test requires that the "exercise of jurisdiction over defendant does not offend traditional notions of fair play and substantial justice." *Ruston*, 9 F.3d at 418. "[W]here a defendant who purposefully . . . directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The burden of proof shifts to the defendant to show that the exercise of personal jurisdiction is unfair or unreasonable based on five factors: the defendant's burden; the forum state's interests; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies. *Seiferth*, 472 F.3d at 275 ; *see also World-Wide Volkswagen*, 444 U.S. at 292.

*2. Analysis*

The court finds that it has specific jurisdiction over each of the defendants for all of the plaintiffs' claims. Because the court has specific jurisdiction over the defendants for all of plaintiffs' claims, the court does not need to consider the existence of general jurisdiction. Further, defendants have not met their burden of showing that personal jurisdiction over them in Texas offends traditional notions of fair play and substantial justice.

Optec clearly has availed itself of Texas law and can reasonably expect to face suit in Texas for claims related to its ongoing business relationship with plaintiffs. This ongoing business relationship is the source of *all* of plaintiffs' many claims against Optec.[1] Optec has a substantial

---

[1] Plaintiffs' claims against Optec comprise causes of action for breach of contract; fraud; conversion; violation of the Texas Theft Liability Act; violation of the Texas Uniform Fraudulent Transfer Act; demand for constructive trust; conspiracy; breach of warranties; violation of the Texas Deceptive Trade Practices Act; products liability; request for

6

sales presence in Texas through its contractual business relationship with LED, a Texas corporation. This relationship has existed since 2004. Optec shipped signs to Texas for LED to sell as its dealer. Optec gave LED a variety of Optec marketing materials to use in Texas, including display signs, catalogues, and brochures. At least at the beginning of their relationship, Optec shipped replacement parts to LED in Texas to honor its warranty commitments to LED and its customers. When Optec became concerned about LED's financial status, Optec and LED agreed to form National, a Texas corporation over which Optec would have control. The contract in which the parties agreed to form National was at least partially negotiated in Texas. The agreement gave Optec total financial control over both National and LED. Optec employees then managed the business affairs of National.

Plaintiffs' claims against Wu and Hwee spring solely from their conduct as controlling officers and/or employees of National, specifically for their allegedly unauthorized transfer of National funds to Optec.[2] Wu and Hwee's direct involvement in (and control of) two Texas corporations shows purposeful availment of Texas law and creates a reasonable basis for them to expect to be sued in Texas. Wu and Hwee both traveled to Texas to conduct business with plaintiffs. Wu and Hwee both participated in the negotiations with LED concerning the formation of National as a Texas corporation. Wu and Hwee were appointed officers of National and served as employees of National. Wu and Hwee directed and managed the business affairs of National, engaging in multiple daily telephone calls and electronic communications with National's Texas employees. Wu and Hwee had total and exclusive control of National's bank accounts. By Optec's agreement with

---

declaratory judgment regarding use of Optec photographs; and defamation/business disparagement.

[2] Plaintiffs's claims against Wu and Hwee comprise causes of action for breach of contract; breach of fiduciary duty to National; fraud; conversion; violation of the Texas Theft Liability Act; violation of the Texas Uniform Fraudulent Transfer Act; demand for constructive trust; conspiracy; and violation of the Texas Deceptive Trade Practices Act.

LED, all of LED's incoming funds were placed in the National bank accounts, with Wu and Hwee in control of releasing these funds to LED for its own operations. By extension, Wu and Hwee's control over the National accounts means that they also had control over the finances of LED.

Because the defendants purposefully directed their activities at Texas residents, to defeat personal jurisdiction, they must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. The defendants simply have not done so; they merely assert that this action does not promote "efficient resolution of controversies" because another suit between the parties is ongoing in California. Considering defendants themselves chose to file suit in California, weeks after plaintiffs filed this suit in Texas, that is a problem of defendants' own making. Defendants' deliberate creation of inefficiency is not a compelling basis to render personal jurisdiction over them unreasonable.

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

## B. Transfer of Venue under 28 U.S.C. § 1404(a)

### 1. Standard of Review

When venue is proper in a given district, a court may transfer to another appropriate forum "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Whether a transfer is indicated is "a matter to be weighed and decided by the District Judge in his discretion upon a consideration of all the factors." *Humble Oil & Refining Co. v. Bell Marine Svc.*, 321 F.2d 53, 57 (5th Cir. 1963). No one factor is given dispositive weight. *In Re: Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004).

As a threshold matter, the court must determine whether the case could have been brought originally in the Central District of California. A diversity action may be brought where any defendant resides, if all defendants reside in the same state. 28 U.S.C. § 1391(a). This requirement

is satisfied, because Optec is a California corporation headquartered in Los Angeles County (within the Central District) and the individual defendants also reside within the Central District. Next, the court must weigh the factors for and against transfer. The Supreme Court has given the court some guidance with regard to the factors it should consider, although no single factor is dispositive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 259 n.6 (1981). The court must consider both private and public interest factors in making its determination. *Volkswagen I*, 371 F.3d at 203. The private interest factors consist of: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; 4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and 5) the plaintiff's choice of forum. *Id.*; *In re Horseshoe Entm't*, 337 F.3d at 434. The public interest factors consist of: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; 4) the avoidance of unnecessary problems of conflict of laws; and 5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Volkswagen I*, 371 F.3d at 203; *Piper Aircraft*, 454 U.S. at 241 n.6.

### *2. Analysis*

The court finds that, while venue is proper both here and in the Central District of California, the public and private factors overwhelmingly weigh in favor of keeping the case here in the Southern District of Texas. Considering the private factors: the sources of proof are, at best for defendants, split between Texas and California. Certainly, any corporate information about the plaintiffs and their damages is in Texas. Any injury that the plaintiffs suffered was suffered in Texas. The anticipated witnesses appear to be primarily located in Texas, especially the non-party witnesses such as plaintiffs' customers. The only witnesses likely to be located in California would

be Wu, Hwee, and other Optec employees under the control of Optec to produce at trial. Defendants assert that it would be "inconvenient" for the Southern District of Texas to retain this case because a suit is already pending in California. However, the defendants themselves created this inconvenience when they chose to file a separate action in California after plaintiffs had already commenced this suit in Texas. But, that argument cuts both ways, because it is equally true that there is "no reason" why the plaintiffs cannot assert their claims in California instead of Texas. Frankly, the court sees no reason why defendants could not have asserted their claims in Texas instead of California; defendants' choice not to do so, despite already facing suit in Texas, should not rob plaintiffs of their choice of forum. Thus all of the private interest factors weigh against transfer.

The public factors also weigh in favor of plaintiffs' choice of forum. If, as defendants assert, this case is unrelated to the pending California case, then no judicial inefficiency or "congestion" results from these two trials proceeding separately. Texas has an interest in adjudicating disputes concerning harm allegedly done to its registered corporations. Many of plaintiffs' causes of action are Texas statutory causes of action. The rest are based on Texas common law. Texas district courts, naturally, will be the most familiar with Texas statutes and common law. Therefore, the public interest factors weigh against transfer as well.

The plaintiffs chose the Southern District of Texas as the forum for their suit. Thus § 1404(a) requires a defendant to show good cause in order to effect a transfer. *In re Volkswagen of America, Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (2008) (citing *Humble Oil*, 321 F.2d at 56). "[T]o show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (quoting § 1404(a)). "Thus, when the transferee venue is

10

not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* Here, the defendant has not demonstrated that any factors weigh in favor of transfer. Therefore they fail to meet their burden to show good cause. Accordingly, defendants' motion to transfer venue to the Central District of California is DENIED.

## C. Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

### *1. Standard of Review*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (supporting facts must be plausible—enough to raise a reasonable expectation).

*2. Analysis*

   *a) Fraud*

Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Under Texas law, to state a claim for common-law fraud, a plaintiff must allege that the defendant made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (quoting *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929-30 (Tex. 1996)). The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002)). As such, Rule 9(b) requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). However, states of mind such as malice, intent or knowledge may be averred generally. *Id.* (citing Fed. R. Civ. P. 9(b)).

Considering plaintiffs' fraud claim as pleaded, the court agrees with defendants that plaintiffs have failed to state their fraud claim with the particularity required under Fifth Circuit precedent and Federal Rule of Civil Procedure 9(b). Plaintiffs' fraud claim includes merely a reference to the facts section of the complaint and an allegation that defendants' conduct constituted fraud and caused damage to plaintiffs. This does not meet the requirements of Rule 9(b). However, this pleading defect may easily be remedied if plaintiffs amend their complaint and plead their fraud claim with the appropriate level of detail.

Accordingly, plaintiffs' claim of fraud is DISMISSED WITHOUT PREJUDICE and plaintiffs are granted leave to file a Second Amended Complaint.

### b) *Conspiracy*

To establish a claim for civil conspiracy in Texas, a plaintiff must show: "(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages." *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 530 (5th Cir. 2004). Under Texas law, civil conspiracy is a derivative tort; if a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Therefore, whether a plaintiff has stated a claim for civil conspiracy "rises and falls on whether he stated a claim on an underlying tort." *Meadows*, 492 F.3d at 640.

Under the intracorporate conspiracy doctrine, a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir.1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783 (1953)). However, for this doctrine to apply, the corporation's employees or directors must be acting *as agents of the corporation*; corporate employees or directors who are acting outside the scope of their employment and/or for their own personal purposes can conspire with each other or the corporation. *See ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 80-81 (S.D. Tex. 2007); *see also Floyd v. Hefner*, 556 F.Supp.2d 617, 656-57 (S.D. Tex. 2008) and *Sherwin Alumina, L.P. v. AluChem, Inc.*, Nos. C-06-183, C-06-210, 2007 WL 950393, at *6 (S.D. Tex. Mar. 26, 2007) (citing Texas state cases holding same).

Considering plaintiffs' conspiracy claim as pleaded, the court agrees with defendants that plaintiffs have failed to state their fraud claim with the particularity required by *Twombly*, which states that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. The plaintiffs' conspiracy cause of action in their First Amended Complaint merely refers to the facts section and then recites the elements of civil conspiracy. Plaintiffs do not specify which underlying tort (or torts) serves as the basis for their conspiracy claim. While plaintiffs do not need to provide "detailed factual allegations," they must at least provide some facts that explain the basis for their conspiracy claim. As with the fraud claim, this pleading defect may easily be remedied if plaintiffs amend their complaint and plead their conspiracy claim with the appropriate level of detail.

Defendants also argue that plaintiffs' conspiracy claim fails because of the intracorporate conspiracy doctrine and because plaintiffs failed to state a claim on the underlying tort of fraud. To be clear, the court <u>does not</u> dismiss plaintiffs' conspiracy claim on either of these bases. The intracorporate conspiracy doctrine pertains only to corporate agents who are acting within their scope of employment as corporate agents. Plaintiffs allege that Wu and Hwee served as officers (or at least employees) in charge of National; in their capacity as National's officers, Wu and Hwee could well have acted outside the scope of their employment with Optec. To the extent that Wu and Hwee were acting for their own personal purposes or outside the scope of their Optec employment, they were able to conspire with each other and Optec. In regard to the requirement of an underlying tort, plaintiffs included more than one tort claim in their First Amended Complaint. Namely, plaintiffs also pled causes of action for conversion and breach of fiduciary duty, neither of which have Defendants attacked as insufficient. Plaintiffs' conspiracy claim could therefore proceed regardless of whether plaintiffs successfully stated a claim for fraud.

14

Accordingly, plaintiffs' claim of conspiracy is DISMISSED WITHOUT PREJUDICE and plaintiffs are granted leave to replead it in a Second Amended Complaint.

### c) *Defamation/Business Disparagement*

To state a claim for defamation under Texas law, a plaintiff must show that "the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998), *cert. denied*, 526 U.S. 1051, 119 S.Ct. 1358 (1999). The plaintiff must identify the alleged defamatory statement and the speaker. *Ameen v. Merck & Co., Inc.*, 226 Fed. Appx. 363, 2007 WL 1026412, at *5 (5th Cir. 2007). A business disparagement claim is similar in many respects to a defamation action. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). The two torts differ in that defamation actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests. *Id.* To establish a business disparagement claim under Texas law, a plaintiff must show that "(1) the defendant published false and disparaging information about the plaintff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Id.* (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).

There is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Gateway Logistics Group, Inc., v. Dangerous Goods Mgmt. Australia Pty, Ltd.,* No. H-05-2742, 2008 WL 1883914, at *10 (S.D. Tex. Apr. 25, 2008) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695 (1990)). The expression of an opinion may be actionable if it "impl[ies] an assertion of objective fact." *Id* . "[W]hether a publication is an actionable statement of fact or a constitutionally protected expression of opinion" depends on its "verifiability and the context in

which [it was] made." *Id.* (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 579, 583 (Tex. 2002). "A statement is considered to be an opinion when, upon consideration of 'the entire context in which it was made,' it cannot be objectively verified." *Id.* (quoting *Morris v. Blanchette*, 181 S.W.3d 422, 424 (Tex. App.–Waco 2005, no pet.)). Texas case law "plainly protects those communications that are not objectifiably verifiable." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 325 (5th Cir. 1997).

The court finds that plaintiffs have successfully stated a claim for defamation and/or business disparagement. Plaintiffs have identified at least one speaker of alleged defamatory statements (Optec vice president Bill McHugh), the statements which were alleged to be defamatory ("bad dealer with a terrible reputation"), the method of publication (oral statements) and the recipients of the statements (customers of National and LED). Contrary to defendants' assertion that this statement can only be understood as opinion, this statement implies an assertion of objective facts, namely that LED was in some respect deficient as a sign dealer ("bad dealer") and that any such deficiency was widely known ("terrible reputation"). One can objectively verify whether LED performed poorly as a sign dealer or had a poor reputation as a sign dealer. Further, these statements were made by Optec, about LED, to customers who were ostensibly purchasing Optec signs from National and/or LED. Considering the context, the customers who heard these statements could easily have understood Optec to be speaking on the basis of known facts from its relationship with plaintiffs.

Accordingly, defendants' motion to dismiss plaintiffs' defamation and/or business disparagement cause of action for failure to state a claim is DENIED.

### III. CONCLUSION

Considering the law and the evidence presented, the court DENIES defendants' motion to dismiss for lack of personal jurisdiction and DENIES defendants' motion to transfer venue. The court DENIES defendant's motion to dismiss plaintiffs' defamation/business disparagement cause of action for failure to state a claim. The court DISMISSES WITHOUT PREJUDICE plaintiffs' causes of action for fraud and conspiracy and GRANTS plaintiffs leave to re-plead them.

It is so ORDERED.

Signed at Houston, Texas on December 3, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY